Exhibit 1

| | | |
|---|---|---|
| MATT COAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | No. 10-cv-03914 |
| TRACY NANCE, JULIE LARDINO, CITY | ) | |
| OF NAPERVILLE, A DAY WITH, INC., | ) | Judge Pallmeyer |
| GOOD LUCK NAT, INC. d/b/a THE GREIF | ) | |
| COMPANY, and A&E TELEVISION | ) | Magistrate Judge Schenkier |
| NETWORKS, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**
**PURSUANT TO RULE 12(b)(6) AND ALTERNATIVE**
**MOTION TO STRIKE PURSUANT TO RULE 12(f)**

# TABLE OF CONTENTS

I.   **FACTS** ......................................................................................................... **1**

  A.  **The Allegations Of The Complaint** ................................................................ **1**

  B.  **The Episode** .................................................................................................. **3**

II.   **ARGUMENT** ................................................................................................ **3**

  A.  **The Court Should Dismiss Count I For Failure To State A Claim Under 42 U.S.C. § 1983** ............................................................................................................. **4**

      1.   Plaintiff's Civil Rights Claim Is Barred By The Statute Of Limitations. ............... 4

      2.   Plaintiff Does Not Allege Any Violation Of His Constitutional Rights ................. 4

      3.   The Doctrine Of Qualified Immunity Bars Plaintiff's Civil Rights Claim Against Officers Nance and Lardino ............................................................................ 6

      4.   Plaintiff Does Not Allege Municipal Liability. ..................................................... 7

      5.   Plaintiff Does Not Allege That The Media Defendants Acted Under Color Of State Law. ........................................................................................................ 9

  B.  **The Court Should Dismiss Count II For Failure To State A Claim For Violation Of The Illinois Right Of Publicity Act** ....................................................... **10**

  C.  **The Court Should Dismiss Count III For Failure To State A Claim For Intentional Infliction Of Emotional Distress** ................................................................. **14**

  D.  **In The Alternative, The Court Should Strike Plaintiff's Requests For Punitive Damages and Attorneys' Fees** ......................................................................... **16**

III.   **CONCLUSION** ............................................................................................ **17**

# TABLE OF CASES

188 LLC v. Trinity Indus., Inc., 300 F.3d 730 (7th Cir. 2002)........................................................ 3
Anderson v. Romero, 72 F.3d 518 (7th Cir. 1995)........................................................................ 5
Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007) ........................................................................ 10
Berkos v. Nat'l Broad. Co., 161 Ill. App. 3d 476 (Ill. 1st Dist. 1987)................................. 12, 15
Brazinski v. Amoco Petroleum Additives Co., 6 F.3d 1176  (7th Cir. 1993)............................. 10
Brooks v. City of Chicago, 564 F.3d 830 (7th Cir. 2009) ............................................................. 4
Caldarola v. County of Westchester, 343 F.3d 570 (2d Cir. 2003) ......................................... 5, 14
Centers v. Centennial Mortgage, Inc., 398 F.3d 930 (7th Cir. 2005) ......................................... 8
Collier v. Murphy, No. 02-cv-2121, 2003 U.S. Dist. Lexis 4821 (N.D. Ill. Mar. 26, 2003)........ 14
Cox Broad. Corp. v. Cohn, 420 U.S. 469 (1975)........................................................................ 13
Cunningham v. Southlake Ctr. for Mental Health, Inc., 924 F.2d 106 (7th Cir. 1991)................. 9
Denius v. Dunlap, 209 F.3d 944 (7th Cir. 2000) .......................................................................... 5
Fraternal Order of Police, Lodge No. 5 v. City of Philadelphia, 812 F.2d 105 (3d Cir. 1987) ...... 5
Frederick v. Select Portfolio Servicing Inc., No. 07-cv-7044, 2009 U.S. Dist. Lexis 7440
    (N.D. Ill. Jan. 30, 2009) ........................................................................................................ 15
Fudge v. Penthouse Int'l, Ltd., 840 F.2d 1012 (1st Cir. 1988)...................................................... 3
Griswold v. Connecticut, 381 U.S. 479 (1965)............................................................................. 4
Guglielmi v. Spelling-Goldberg Prods., 603 P.2d 454 (Cal. 1979)............................................ 12
Harlow v. Fitzgerald, 457 U.S. 800 (1982).................................................................................. 7
Hukic v. Aurora Loan Servs., 588 F.3d 420 (7th Cir. 2009) ....................................................... 15
Knierim v. Izzo, 22 Ill. 2d 73, 174 N.E.2d 157 (Ill. 1961............................................................ 17
Lauro v. Charles, 219 F.3d 202 (2000)......................................................................................... 5
Leopold v. Levin, 45 Ill. 2d 434, 295 N.E.2d 250 (Ill. 1970)..................................................... 11
Mirfasihi v. Fleet Mortgage Corp., 01-cv-722, 2007 U.S. Dist. Lexis 51474
    (N.D. Ill. July 17, 2007)......................................................................................................... 12
Monell v. Department of Social Services of the City of New York, 436 U.S. 658 (1977) ........... 7
MRA Holdings, LLC v. Lane, 242 F. Supp. 2d 1205 (M.D. Fla. 2002)..................................... 12
Mullins v. Bookman, No. 94-cv-1591, 1995 U.S. Dist. Lexis 17552 (N.D. Ga. 1995) ................. 9
Paul v. Davis, 424 U.S. 639 (1976) ............................................................................................. 4
Pembaur v. City of Cincinnati, 475 U.S. 469 (1986)..................................................................... 7
Pesce v. J. Sterling Morton High School, 830 F.2d 789 (7th Cir. 1987)...................................... 5
Poulos v. Lutheran Social Servs. of Ill., Inc., 312 Ill. App.3d 731 (Ill. 1st Dist. 2000) .............. 12
Public Fin. Corp. v. Davis, 66 Ill. 2d 85 360 N.E.2d 765 (Ill. 1976)......................................... 15
Robinson v. City of Philadelphia, No. 99-1158, 2001 U.S. Dist. Lexis 23128
    (E.D. Pa. Mar. 29, 2001)........................................................................................................ 9
Ryan v. City of Chicago, 274 Ill. App. 3d 913, 654 N.E.2d 483 (Ill. 1st Dist. 1995) ................. 17
Schwartz v. Home Depot U.S.A., Inc., No. 00-cv-5282, 2000 U.S. Dist. Lexis 17744
    (N.D. Ill. Dec. 1, 2000) .................................................................................................... 15, 16
Time, Inc. v. Hill, 385 U.S. 374 (1967) ................................................................................. 12, 14
Toney v. L'Oreal USA, Inc., 406 F.3d 905 (7th Cir. 2004) ......................................................... 11
Turner v. Beneficial Nat'l Bank, 405 F. Supp. 2d 929 (N.D. Ill. 2005) ..................................... 16
United Mine Workers v. Gibbs, 383 U.S. 715 (1966) ................................................................. 10
Villalovos v. Sundance Assocs., Inc., No. 01 C 8468, 2003 U.S. Dist. Lexis 387
    (N.D. Ill. Jan. 13, 2003) ........................................................................................................ 11

Wallace v. Kato, 549 U.S. 384 (2007) .......................................................................... 4

Welsh v. Commonwealth Edison Co., 306 Ill. App. 3d 148, 713 N.E.2d 679
   (Ill. 1st Dist. 1999) .................................................................................................. 16

Wilson v. Hardcopy, No. 94-2939, 1995 U.S. App. Lexis 31437 (7th Cir. Oct. 23, 1995) ........... 9

Winters v. New York, 333 U.S. 507 (1948) ................................................................. 12

Plaintiff Matt Coan was pulled over by Naperville, Illinois, police officers on a public road for driving with a suspended license.  The traffic stop was recorded on camera and later briefly appeared in a non-fiction, unscripted television show that followed female officers of the Naperville, Illinois, police force while they carried out their duties.  Plaintiff now belatedly alleges that the police officers, the City, and the producer and broadcaster of the show violated his constitutional right to privacy and right of publicity and intentionally caused him emotional distress.  Plaintiff's § 1983 claim is barred by the statute of limitations and is legally and factually untenable.  Plaintiff's right of publicity claim fails because the claimed use of his image is exempt from the Illinois Right of Publicity Act and protected from liability by the First Amendment.[1]  Plaintiff fails to allege either extreme and outrageous conduct or severe emotional distress in support of his IIED claim.  Because Plaintiff fails to state claims upon which relief can be granted, this Court should dismiss his Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

## I.    FACTS

### A.    The Allegations Of The Complaint

Plaintiff Matt Coan ("Plaintiff") alleges three claims against six Defendants[2] based on a traffic stop and his appearance in an episode of the television show "Female Forces" (the "Episode"), which was broadcast on the Biography Channel, a cable channel that A&E Television Networks, LLC ("AETN"), operates.  The Episode shows Plaintiff's traffic stop in Naperville on April 4, 2008.  (See Compl. ¶ 25.)  Plaintiff alleges that he was pulled over by

---

[1] Separately, Defendants have filed a motion for partial summary judgment because Plaintiff's state-law claims are time-barred.

[2] All defendants are referred to herein collectively as "Defendants."  A Day With, Inc., Good Luck Nat, Inc., and A&E Television Networks, LLC, are referred to herein collectively as the "Media Defendants."

1

Officer Tracy Nance "purportedly because [he] was driving with a suspended driver's license." (Id.)  Plaintiff apparently does not challenge the basis for the traffic stop.  Both Officer Nance and the back-up officer who later arrived to the scene, Officer Julie Lardino, were accompanied by Female Forces film crews.  (See id. ¶¶ 29-30, 32.)  After he was pulled over, Plaintiff vomited because he was sick.  (Id. ¶¶ 43, 48.)  Plaintiff alleges that, after Officer Nance took his driver's license and returned to her vehicle, he was kept waiting in his vehicle for "a significant length of time" without explanation (id. ¶¶ 27, 31); Plaintiff alleges that the delay was to await the arrival of a back-up officer, Officer Lardino (id. ¶ 32).  Officers Nance and Lardino discussed the situation and determined to write Coan a ticket rather than arrest him.  (Id. ¶ 48.)  Plaintiff points to various statements by the officers.  (Id. ¶¶ 43, 46, 48-51.)  Plaintiff alleges that he never consented to appear in the Episode.  (Id. ¶ 35.)

Plaintiff alleges that he "was contacted by several people" after the Episode was first broadcast.  (Id. ¶ 36.)  He does not allege the date of that broadcast, although he does allege that the Episode was "re-broadcast . . . on multiple occasions in 2009" and that it was "available for downloading or web broadcast at iTunes and other video distribution sites on the Internet."  (Id. ¶¶ 38-39.)  Plaintiff alleges that he was "humiliated and devastated" as a result of the Episode's broadcast.  (Id. ¶¶ 40-41.)

Plaintiff also alleges the following legal conclusions regarding the Episode and its broadcast.  He alleges that his "stop and detention for the de minimis charge of having a suspended license was not of legitimate public interest."  (Compl. ¶ 11.)  He alleges that his "name, image and voice were used . . . for Defendants' commercial purposes" (id. ¶ 91), that Female Forces is a "for-profit entertainment television program" (id.), and that, "[a]s indicated

by its 'Beauty, Brains and Badge' tagline, Female Forces is not a news program, but rather it is an entertainment show that is produced for commercial purposes" (id. ¶ 92).

Based on these allegations, Plaintiff asserts three claims:  Count I, for violation of 42 U.S.C. § 1983 against all Defendants; Count II, for violation of the Illinois Right of Publicity Act, 765 ILCS 1075/1 et seq., against the Media Defendants; and Count III, intentional infliction of emotional distress against all Defendants.

## B.     The Episode

Attached hereto as Exhibit A is a recording of the Episode.  The Court may consider the Episode in ruling on this motion because it is referenced in the Complaint and is central to Plaintiff's claims.  See 188 LLC v. Trinity Indus., Inc., 300 F.3d 730, 735 (7th Cir. 2002) ("[D]ocuments attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim.") (quotation omitted); Fudge v. Penthouse Int'l, Ltd., 840 F.2d 1012, 1015 (1st Cir. 1988) (holding that lower court properly considered allegedly libelous magazine article attached to motion to dismiss because article was "absolutely central" to complaint).  The segment involving Plaintiff begins at approximately the 35:42 mark and ends at approximately the 37:33 mark.  A review of the segment will aid the Court in considering the issues raised in this motion, such as Plaintiff's claim that the Defendants engaged in extreme and outrageous conduct.  A transcript of the segment involving Plaintiff is attached hereto as Exhibit B, to aid the Court in referring to the Episode.

## II.   ARGUMENT

The Court should dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted, because each of Plaintiff's claims fails as a matter of law.

**A.    The Court Should Dismiss Count I For Failure To State A Claim Under 42 U.S.C. § 1983**

1.    Plaintiff's Civil Rights Claim Is Barred By The Statute Of Limitations.

Plaintiff's claim under 42 U.S.C. § 1983 is clearly barred by the statute of limitations. Section 1983 claims arising in Illinois are subject to the two-year limitations period of 735 ILCS 5/13-202. See Wallace v. Kato, 549 U.S. 384, 384 (2007); Brooks v. City of Chicago, 564 F.3d 830, 832 (7th Cir. 2009). Plaintiff alleges that the traffic stop that forms the basis for his claim occurred on April 4, 2008. (Compl. ¶ 25.) He filed his Complaint more than two years after that date, on June 23, 2010. (See Docket No. 1.) Thus, his claim is time-barred and should be dismissed for that reason.

2.    Plaintiff Does Not Allege Any Violation Of His Constitutional Rights.

Besides being time-barred, the facts that Plaintiff has alleged do not a state a claim for violation of 42 U.S.C. § 1983. To state such a claim, Plaintiff must allege the violation of some federal right. In his Complaint, he refers two such rights: the federal right to privacy as developed in Griswold v. Connecticut, 381 U.S. 479 (1965), and subsequent cases (see Compl. ¶ 56); and the Fourth Amendment right to be free from illegal searches and seizures (id. ¶ 57).

Coan clearly has not alleged any violation of the Griswold-type right of privacy. The Supreme Court has characterized this constitutional privacy right as protecting two different kinds of interests: autonomy and confidentiality. The autonomy interest relates to independence in making important decisions in private spheres such as the home and activities such as "marriage, procreation, contraception, family relationships, and child rearing and education," Paul v. Davis, 424 U.S. 639, 713 (1976), which are clearly not at stake in Plaintiffs' Complaint. The confidentiality interest protects an individual from disclosure of the most personal matters. The Seventh Circuit only recognizes constitutionally-protected confidentiality in private medical

4

and financial information.  See Denius v. Dunlap, 209 F.3d 944, 957-58 (7th Cir. 2000)

(financial records); Anderson v. Romero, 72 F.3d 518, 523-27 (7th Cir. 1995) (prisoner's HIV-

positive status); see also Pesce v. J. Sterling Morton High School, 830 F.2d 789, 795-98 (7th Cir.

1987) (requirement that teachers disclose child abuse does not violate constitutional right).

Plaintiff does not identify any disclosure of confidential information at all in his Complaint, only

filming outside on a public street.  See Fraternal Order of Police, Lodge No. 5 v. City of

Philadelphia, 812 F.2d 105, 116, 117 (3d Cir. 1987) ("Even if the arrest does not take place in

public view, the booking at police headquarters is not private"; "to the extent that gambling is

done in public, such as at casinos, and drinking is done openly in bars or public functions, there

is no privacy interest involved"); see also Paul, 424 U.S. at 714 (declining to enlarge the scope of

the constitutional privacy right to encompass an arrest).  Plaintiff does not allege a constitutional

privacy violation.

Neither has Coan alleged a violation of the Fourth Amendment right to be free from

unreasonable searches and seizures.  The Complaint's language suggests that Plaintiff is

attempting to invoke the decisions of the Second Circuit Court of Appeals concerning the

legality of "perp walks," the practice of transporting arrestees solely for the benefit of the news

media.  Compare Lauro v. Charles, 219 F.3d 202, 216 (2000) (holding that a perp walk "served

no law enforcement purpose"), with Compl. ¶ 70 (alleging that "the Female Forces camera crews

were not serving any legitimate law enforcement purpose").  In Lauro, the Second Circuit held

that a police detective violated an arrestee's Fourth Amendment rights when he removed the

arrestee from his cell, loaded him into a police car, and drove the car around the block for no

other purpose than to allow the news media to film the arrestee.  See 219 F.3d at 204-05.  The

court limited this principle in Caldarola v. County of Westchester, 343 F.3d 570 (2d Cir. 2003),

holding that the police did not violate the Fourth Amendment by jointly transporting arrestees, filming their arrests, and showing the video to the press. Id. at 577. The court noted a valid law enforcement purpose for the transportation and the filming: to inform the public about the government's efforts to stop the underlying crimes, "enhance[ ] the transparency of the criminal justice system, and . . . deter others from attempting similar crimes." Id.

Plaintiff's attempt to invoke the Second Circuit's "perp walk" cases fails. Plaintiff suggests that he was improperly held by the Naperville police solely to be filmed for Female Forces, but his own factual allegations and the Episode itself show that not to be true. Plaintiff alleges that he was first stopped by Officer Nance, and that Officer Lardino arrived at the scene later (Compl. ¶ 32); the Episode shows the same thing. Plaintiff also alleges that a Female Forces camera crew was accompanying Officer Nance at the time when he was initially stopped (id. ¶ 29); the Episode confirms that allegation. Thus, although Plaintiff alleges that there was some delay between his initial stop and Officer Lardino's arrival (an unspecified "significant length of time" (id. ¶ 31)), he also alleges that a film crew was present from the time when he was first pulled over – contradicting his own conclusion that the purpose of the delay was to await a film crew.[3] Plaintiff has failed to allege any facts that support a claim for any deprivation of constitutional rights

3.    The Doctrine Of Qualified Immunity Bars Plaintiff's Civil Rights Claim Against Officers Nance and Lardino.

Even if the Court holds that Plaintiff has alleged a violation of some constitutional right, it should nevertheless dismiss Count I as to Officers Nance and Lardino because Plaintiff's claim

---

[3] It appears that Plaintiff's allegation of additional detention to await Officer Lardino results mainly from a faulty copy-and-paste of the allegations of the complaint in Best v. Malec, No. 09-cv-7749, which also involves allegations relating to an interaction that appeared in an episode of Female Forces. In that case, unlike here, the officer who initially pulled the plaintiff over was not accompanied by a Female Forces film crew.

does not involve a clearly-established right. Under the qualified immunity doctrine, "government officials performing discretionary functions . . . are shielded from liability . . . insofar as their conduct does not violate clearly established . . . constitutional rights." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). As explained above, Plaintiff fails to show any constitutional right was violated, late alone a clearly established one. Accordingly, the Court should dismiss Count I as to Officers Nance and Lardino.

4.     Plaintiff Does Not Allege Municipal Liability.

Additionally, Plaintiff fails to allege a violation of § 1983 by the City of Naperville (the "City") under the requirements laid out in Monell v. Department of Social Services of the City of New York, 436 U.S. 658 (1977). A municipality cannot be liable under § 1983 for the actions of its employees under a respondeat superior theory. Id. at 691. Under Monell, a municipality is liable only when (1) the execution of an express governmental policy inflicted the injury, (2) the municipal actor responsible for the violation has final policymaking authority, or (3) the violation is a widespread practice of the municipality. 436 U.S. 658; see Pembaur v. City of Cincinnati, 475 U.S. 469 (1986).

Plaintiff attempts to meet this requirement by pointing to the access agreement between the City and ADW concerning the filming of Female Forces (the "Access Agreement," Compl. Ex. A). A review of the Access Agreement itself, however, reveals no policy of the City that could have caused the conduct that Plaintiff attempts to allege. Plaintiff attempts to allege that the Female Forces film crew somehow extended the length of his detention. Nothing in the Access Agreement condones or facilitates any delay in police actions. To the contrary, it provides that "the recordings shall not interfere with the Police Department's operations and services." (Compl. Ex. A ¶ 1, 3 (emphasis added).)

Plaintiff also seeks to transform the Access Agreement into a complete waiver of the requirements of Monell. Plaintiff asks the Court to infer from the agreement's language the City's approval of not only the content of the Episode but also (1) all police activity that is included in the Episode and (2) any police activity that relates to anything shown in the Episode. Instead, the Access Agreement merely provides that a designated representative of the City's police department may review a rough cut of each episode, and

> advise ADW . . . of any material that it desires to have removed from the rough cut. . . . Failure . . . to notify ADW of such deletion request within the designated period shall be considered approval of the content thereof and shall be deemed a waiver of any future claims with respect to the content of any such pilot or episode.

(Compl. Ex. A ¶ 5 (emphasis added).)

The Access Agreement does not provide what Plaintiff suggests. It clearly refers to the City's approval of, at most, what appears in an episode, not all actions that underlie anything that appears in an episode. To the extent that Plaintiff's allegations suggest otherwise, they conflict with the terms of the agreement, and the terms of the agreement control. See Centers v. Centennial Mortgage, Inc., 398 F.3d 930, 933 (7th Cir. 2005) (A contract attached as an exhibit to a complaint is "a part of the pleading for all purposes" under F.R.C.P. 10(c) and controls over contradictory allegations.).

Further, the thrust of Plaintiff's claim is that he was held for no other purpose than to await the arrival of a second Female Forces crew with Officer Lardino. However, even if that allegation were true and properly pleaded, no such detention is shown in the Episode. Rather, the Episode itself gives the impression that Officer Lardino arrived at the traffic stop very soon after the initial stop by Officer Nance. No reviewer from the City could "approve" a detention that does not appear in the Episode by reviewing the Episode as the contract provides. In short, the City's right to review the Female Forces episode pursuant to the Access Agreement does not

provide any basis for liability under Monell, and Plaintiff fails to state a claim against the City

for violation of § 1983.

> 5. Plaintiff Does Not Allege That The Media Defendants Acted Under Color Of State Law.

Plaintiff also does not state a claim against the Media Defendants under § 1983 because

he does not allege that they acted under color of state law. "Private parties may be liable under

§ 1983 if they conspire with state officials or make extensive use of state procedures with the

overt, significant assistance of state officials." Wilson v. Hardcopy, No. 94-2939, 1995 U.S.

App. Lexis 31437, at *4-5 (7th Cir. Oct. 23, 1995). Private parties may also be liable when they

engage in "joint action" with the state; in such a situation, "both public and private actors share a

common, unconstitutional goal" of depriving the plaintiff of constitutional rights. Cunningham

v. Southlake Ctr. for Mental Health, Inc., 924 F.2d 106, 107-08 (7th Cir. 1991); see Wilson,

1995 U.S. App. Lexis 31437, at *5 (affirming dismissal where plaintiff did "not claim that the

defendants conspired with state officials or made use of state procedures."); Robinson v. City of

Philadelphia, No. 99-1158, 2001 U.S. Dist. Lexis 23128, at *11 (E.D. Pa. Mar. 29, 2001)

(holding local news reporter not liable under § 1983 where police officer notified reporter in

advance of search of chop shop, because insufficient "level of private-public coordination");

Mullins v. Bookman, No. 94-cv-1591, 1995 U.S. Dist. Lexis 17552, at *3-4 (N.D. Ga. 1995)

(dismissing § 1983 claim against reporter for airing footage of prisoner, when prison officials

allowed reporter to enter prison and escorted reporter through facility).

Plaintiff does not allege any such conduct by the Media Defendants. The Access

Agreement, attached to the Complaint, specifically requires that "the recordings shall not

interfere with the Police Department's operations and services." (Compl. Ex. A ¶ 1, 3.)

Although Plaintiff generally states that the Defendants "conspired" to violate his constitutional

rights (Compl. ¶ 74), he does not allege any actual conduct by the Media Defendants that relates

to the alleged violations of constitutional rights. In particular, Plaintiff does not allege any facts

relating to any agreement of AETN – in fact, he alleges no conduct by AETN at all except for

broadcast of the Episode. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007) (requiring

a plaintiff pleading antitrust conspiracy to plead "plausible grounds to infer an agreement,"

"enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal

agreement"). No basis exists to hold the Media Defendants liable under § 1983.[4]

**B.      The Court Should Dismiss Count II For Failure To State A Claim For Violation Of The Illinois Right Of Publicity Act**[5]

Because the Media Defendants did not use Plaintiff's image for a commercial purpose

and because the Media Defendants' use of Plaintiff's image is protected from liability by the

First Amendment, Plaintiff has not alleged a violation of IRPA, and the Court should dismiss

Count II. In Count II, Plaintiff alleges that the Media Defendants violated the Illinois Right of

Publicity Act, 765 ILCS 1075/1 et seq. (IRPA). IRPA prohibits use of an individual's identity

(which includes the person's likeness, 765 ILCS 1075/5) for commercial purposes without the

individual's written consent. 765 ILCS 1075/30.

---

[4] But see Frederick v. Biography Channel et al., No. 09-cv-6837, Docket No. 19.

[5] If this Court dismisses Count I against all Defendants, then it may decline to exercise supplemental jurisdiction and dismiss the pendent state-law claims alleged in Counts II and III. See 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction . . . if . . . the district court has dismissed all claims over which it has original jurisdiction . . . .") (emphasis added); see also United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966) ("[C]ertainly, if the federal claims are dismissed before trial, . . . the [pendent] state claims should be dismissed as well."). However, as this Memorandum details, Counts II and III should be dismissed on the merits for failure to state a claim under Illinois law, and their "correct disposition . . . [is] so clear as a matter of state law that [they can] be determined without further trial proceedings and without entanglement with any difficult issues of state law." Brazinski v. Amoco Petroleum Additives Co., 6 F.3d 1176, 1182 (7th Cir. 1993) (affirming judgment on the merits for defendants on state-law privacy claims after court had granted summary judgment for defendants on federal labor law claim). Accordingly, Defendants request that the Court exercise its discretion to retain supplemental jurisdiction over Counts II and III for the purpose of fully granting Defendants' motion to dismiss.

IRPA is inapplicable to Plaintiff's allegations because the Media Defendants did not use

Plaintiff's identity for a "commercial purpose." IRPA defines "commercial purpose" as use

"(i) on or in connection with the offering for sale or sale of a product, merchandise, goods, or

services; (ii) for purposes of advertising or promoting products, merchandise, goods, or services;

or (iii) for the purpose of fundraising." 765 ILCS 1075/5. "The basis of a right of publicity

claim concerns the message--whether the plaintiff endorses, or appears to endorse the product in

question." Toney v. L'Oreal USA, Inc., 406 F.3d 905, 910 (7th Cir. 2004). IRPA does not apply

to:

> (1) use of an individual's identity in an attempt to portray [or] describe . . . that individual in a live performance, a single and original work of fine art, play, book, article, musical work, film, radio, television, or other audio, visual, or audio-visual work, provided that the performance, work, play, book, article, or film does not constitute in and of itself a commercial advertisement for a product, merchandise, goods, or services;

> (2) use of an individual's identity for non-commercial purposes, including any news [or] public affairs . . . broadcast or account . . . . [or]

> (4) promotional materials, advertisements, or commercial announcements for a use described under paragraph (1) [or] (2) . . . .

765 ILCS 1075/35(b). These exceptions to IRPA stem from First Amendment principles, as

expressed in Leopold v. Levin, 45 Ill. 2d 434, 295 N.E.2d 250 (Ill. 1970), in which the Illinois

Supreme Court first recognized the common-law tort of invasion of privacy by misappropriation

of name or likeness.[6]

---

[6] While IRPA supplanted the common-law right of publicity, it provides that it does "not affect
an individual's common law rights as they existed before the effective date of this Act." 765
ILCS 1075/60. Accordingly, pre-IRPA decisions are useful to interpret its provisions. See
Villalovos v. Sundance Assocs., Inc., No. 01 C 8468, 2003 U.S. Dist. Lexis 387, at *9-10 (N.D.
Ill. Jan. 13, 2003) ("[T]he Court examines both the statutory language and common law to
determine the scope of the appropriate tort."). Additionally, Illinois courts and courts in this
District frequently refer to the Restatement of Torts (2d), § 652D, to define and explain the scope

Plaintiff suggests that the Media Defendants used his image for a commercial purpose because Female Forces is a "for-profit entertainment television program" (Compl. ¶ 91) and "is not a news program" (id. ¶ 92), and because the Media Defendants have profited by producing and broadcasting the Episode (id. ¶ 93). This is simply not the standard for finding a commercial purpose, either under IRPA or under long-established First Amendment law. Courts have repeatedly held that works are no less deserving of First Amendment protection because they contain an entertainment component or because they are sold for profit. "The line between the informing and the entertaining is too elusive for the protection of that basic right [a free press]. . . . What is one man's amusement, teaches another's doctrine." Leopold, 45 Ill. 2d at 441, 295 N.E.2d at 255 (quoting Winters v. New York, 333 U.S. 507, 510 (1948)). "The First Amendment is not limited to those who publish without charge." Guglielmi v. Spelling-Goldberg Prods., 603 P.2d 454, 459 (Cal. 1979). "[B]ooks, as well as newspapers and magazines, are normally a form of expression protected by the first amendment and their protection is not affected by the circumstances that the publications are sold for profit." Leopold, 45 Ill. 2d at 441, 295 N.E.2d at 254 (extending this principle to a motion picture) (citing Time, Inc. v. Hill, 385 U.S. 374, 397 (1967)); see also Berkos v. Nat'l Broad. Co., Inc., 161 Ill. App. 3d 476, 495, 515 N.E.2d 668, 679 (Ill. 1st Dist. 1987) ("[A] newspaper . . . although it is not a philanthropic institution, does not become liable . . . to every person whose name or likeness it publishes.") (quoting Restatement (2d) of Torts, § 652C, cmt. d); MRA Holdings, LLC v. Lane, 242 F. Supp. 2d 1205, 1213 (M.D. Fla. 2002) (holding appearance in Girls Gone Wild video not a commercial use where plaintiff's "image and likeness were never

of IRPA. See, e.g., Poulos v. Lutheran Social Servs. of Ill., Inc., 312 Ill. App.3d 731, 740 (Ill. 1st Dist. 2000); Mirfasihi v. Fleet Mortgage Corp., 01-cv-722, 2007 U.S. Dist. Lexis 51474, at *19 (N.D. Ill. July 17, 2007) (citing Restatement § 652D cmt. b).

associated with a product or service unrelated to that work").  IRPA reflects this principle in its

exemption, in 765 ILCS 1075/35(b)(1), of a broad range of works without regard to their

propensity to entertain or their profitability, requiring only that the subject work "does not

constitute in and of itself a commercial advertisement for a product, merchandise, goods, or

services."

The Episode uses Plaintiff's identity in connection with legitimate coverage of public

activities and is thus exempt from IRPA.  See Berkos, 161 Ill. App. 3d at 496, 515 N.E.2d at 679

("The value of the plaintiff's name is not appropriated by mere mention of it, or by reference to it

in connection with legitimate mention of his public activities. . . .  No one has the right to object

merely because his name or his appearance is brought before the public . . . .") (quoting

Restatement (2d) of Torts, § 652C, cmt. d).  Driving with a suspended license is a misdemeanor

under Illinois law.  625 ILCS 5/6-303.  The commission of a crime is a matter of public concern.

"The commission of crime, prosecutions resulting from it, and judicial proceedings arising from

the prosecutions . . . are without question events of legitimate concern to the public and

consequently fall within the responsibility of the press to report the operations of government."

Cox Broad. Corp. v. Cohn, 420 U.S. 469, 492 (1975).  "Those who commit crime or are accused

of it [are] persons of public interest, concerning whom the public is entitled to be informed."

Restatement (2d) of Torts, § 652D cmt. f.

While Plaintiff's traffic stop was not breaking news, "[t]he scope of a matter of legitimate

concern to the public is not limited to . . . reports of current events or activities.  It extends also to

the use of names, likenesses or facts in giving information to the public for purposes of

education, amusement or enlightenment, when the public may reasonably be expected to have a

legitimate interest in what is published."  Restatement (2d) of Torts, § 625D cmt. j (emphasis

added); see also Caldarola v. County of Westchester, 343 F.3d 570, 576 (2d Cir. 2003) (noting government interest in informing the public concerning law enforcement efforts).  The protection of reporting on matters of public concern springs from the First Amendment, and "[n]o suggestion can be found in the Constitution that the freedom there guaranteed for speech and the press bears an inverse ratio to the timeliness and importance of the ideas seeking expression." Time, Inc. v. Hill, 385 U.S. 374, 388 (1967) (quotation omitted).    Because the Media Defendants used Plaintiff's identity in a public affairs broadcast regarding a matter of legitimate public concern, its use is exempt from IRPA.[7]

Additionally, the use of Plaintiff's identity is exempt as a use to portray or describe him in a television work.  See Collier v. Murphy, No. 02-cv-2121, 2003 U.S. Dist. Lexis 4821, at*8 (N.D. Ill. Mar. 26, 2003) (holding alleged depiction of plaintiff in television cartoon series exempt from IRPA under 735 ILCS 1075/35(b)(1)).  The "brains, beauty, and a badge" tagline to which Plaintiff's Complaint refers (see Compl. ¶¶ 14, 117) does not require otherwise.  Indeed, IRPA specifically exempts from its scope "promotional materials, advertisements, or commercial announcements" for other exempted uses.  765 ILCS 1075/35(b)(4).  Plaintiff's appearance in Female Forces does not promote a product or suggest that Plaintiff endorses any product, and it is not "for commercial purposes" under IRPA.  Accordingly, Plaintiff has failed to state a claim under the Illinois Right of Publicity Act upon which relief can be granted.

### C.    The Court Should Dismiss Count III For Failure To State A Claim For Intentional Infliction Of Emotional Distress

Plaintiff fails to sufficiently allege a cause of action for intentional infliction of emotional distress (IIED).  To state a claim for IIED, Plaintiff must allege that (1) the Defendants' conduct

---

[7] But see Best v. Malec, No. 09-cv-7749, Docket No. 38 (stating that defendants had not "squarely presented" arguments for dismissal plaintiff's Right of Publicity Act claim and denying motion to dismiss on that basis).

is so extreme and outrageous as to exceed all possible bounds of decency; (2) the emotional

distress is so severe that no reasonable person could be expected to endure it; and (3) the

Defendants intended to inflict this distress or were substantially certain their conduct would

result in severe distress. Berkos v. Nat'l Broad. Co., 161 Ill. App. 3d 476, 496-97 (Ill. 1st Dist.

1987). Federal courts dismiss IIED claims on the pleadings for failure to satisfy one or more of

these elements. See, e.g., Hukic v. Aurora Loan Servs., 588 F.3d 420, 438 (7th Cir. 2009)

(affirming dismissal of IIED claim for failure to allege "extreme and outrageous" conduct);

Frederick v. Select Portfolio Servicing Inc., No. 07-cv-7044, 2009 U.S. Dist. Lexis 7440, at *22

(N.D. Ill. Jan. 30, 2009) (dismissing IIED claim for failure to allege "extreme and outrageous"

conduct); Schwartz v. Home Depot U.S.A., Inc., No. 00-cv-5282, 2000 U.S. Dist. Lexis 17744,

at *16 (N.D. Ill. Dec. 1, 2000) (dismissing IIED claim for failure to allege severe emotional

distress). "[M]ere insults, indignities, threats, annoyances, petty oppressions or trivialities" do

not meet this standard. Public Fin. Corp. v. Davis, 66 Ill. 2d 85, 89, 360 N.E.2d 765 (Ill. 1976).

In this case, Plaintiff fails to sufficiently allege either the first or second element of the

tort. First, the conduct that Plaintiff alleges is not extreme and outrageous. It appears that

Plaintiff bases his IIED claim on statements by Officers Nance and Lardino that appear in the

Episode (see Compl. ¶¶ 109-15). However, no statement in the Episode amounts even to a non-

actionable "insult[ ]" or "indignit[y]." Plaintiff also alleges that he "had been assured that the

stop and detention would never be televised without his consent." (Compl. ¶ 116.) As noted

above, however, Plaintiff does not allege that this assurance came from any Defendant, and he

does not allege any other facts concerning any such assurance.[8] Even if Plaintiff had alleged that

---

[8] Again, this discrepancy seems to result from Plaintiff's copy-and-paste of the complaint in Best
v. Malec, No. 09-cv-7749. In that case, unlike here, the plaintiff attributed such an assurance to
one of the officers involved in her arrest.

one of the officers made such a statement, such a broken promise would not amount to extreme or outrageous conduct sufficient to support an IIED claim under Illinois law.

Additionally, Plaintiff falls well short of pleading the second element, actionable emotional distress. "The emotional distress must be severe. . . . [F]right, horror, grief, shame, humiliation, worry, etc. . . . alone are not actionable." Welsh v. Commonwealth Edison Co., 306 Ill. App. 3d 148, 155, 713 N.E.2d 679, 684 (Ill. 1st Dist. 1999). In this respect "the complaint must be specific, and detailed beyond what is normally considered permissible . . . . Merely characterizing emotional distress as severe is not sufficient." Schwartz v. Home Depot U.S.A., Inc., No. 00-cv-5282, 2000 U.S. Dist. Lexis 17744, at *16 (N.D. Ill. Dec. 1, 2000) (quotations omitted). Here, Plaintiff merely alleges that he suffered "severe embarrassment, humiliation and emotional distress." (Compl. ¶ 117.) This assertion does not approach the level of severity necessary for a cognizable claim. Thus, Plaintiff fails to allege either severe emotional distress or extreme and outrageous conduct, and the Court should dismiss Count III for failure to state a claim.

> **D.    In The Alternative, The Court Should Strike Plaintiff's Requests For Punitive Damages and Attorneys' Fees**

Additionally, if Count III survives Defendants' motion to dismiss, Defendants request that, pursuant to Rule 12(f), the Court strike Plaintiff's requests for attorneys' fees and punitive damages because such recoveries are not authorized by law.

The Court should strike Plaintiff's requests for attorneys' fees in Count III. No law supports an award of attorneys' fees to a plaintiff who successfully alleges intentional infliction of emotional distress or invasion of privacy by publication of private facts. See Turner v. Beneficial Nat'l Bank, 405 F. Supp. 2d 929, 931 (N.D. Ill. 2005) ("The general rule in American state and federal courts is that, except for those cases that fall under a statute or contract which

authorizes the award of attorneys' fees, each party bears his own costs incurred in the prosecution or defense of a claim."). Additionally, the City and Officers Nance and Lardino have immunity from any such award under the Illinois Local Governmental and Governmental Employees Tort Immunity Act, 745 ILCS 10/1-101 et seq. See Ryan v. City of Chicago, 274 Ill. App. 3d 913, 926, 654 N.E.2d 483, 492 (Ill. 1st Dist. 1995) (holding attorneys' fees awards punitive and subject to immunity).

The Court should also strike Plaintiff's requests for punitive damages in Count III. Again, the City and its employees are immune from such damages under the Illinois Local Governmental and Governmental Employees Tort Immunity Act, 745 ILCS 10/1-101 et seq., and, further, punitive damages are not available for IIED claims under Illinois law. Knierim v. Izzo, 22 Ill. 2d 73, 88, 174 N.E.2d 157, 165 (Ill. 1961).

## III.  CONCLUSION

For the foregoing reasons, Defendants request that the Court dismiss Plaintiff's Complaint pursuant to Rule 12(b)(6), or, in the alternative, strike Plaintiff's requests for attorneys' fees and punitive damages in Count III, and provide such further relief as is just.

Dated: September 2, 2010                    Respectfully submitted,

TRACY NANCE, JULIE LARDINO, CITY OF NAPERVILLE, A DAY WITH, INC., GOOD LUCK NAT, INC., and A&E TELEVISION NETWORKS, LLC

By:     /s/ Steven P. Mandell        
        One of their attorneys

Steven P. Mandell (ARDC #6183729)
Steven L. Baron (ARDC #6200868)
Sharon R. Albrecht (ARDC #6288927)
MANDELL MENKES LLC
333 West Wacker Drive, Ste. 300
Chicago, IL  60606
Tel:  (312) 251-1000

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that he caused to be filed the attached MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PURSUANT TO RULE 12(b)(6) AND ALTERNATIVE MOTION TO STRIKE PURSUANT TO RULE 12(f) electronically with the United States District Court for the Northern District of Illinois, Eastern Division, 219 South Dearborn Street, Chicago, Illinois, on September 2, 2010, which will serve notice on the following by ECF:

> Mark W. Mathys
> Law Offices of Mathys & Schneid
> 1730 Park Street, Suite 224
> Naperville, IL 60563
> mwm@mathyslaw.com

/s/ Steven P. Mandell

#182796